# IN THE COURT OF APPEALS OF IOWA

No. 15-0170
Filed October 28, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**XZAVIER LEELAND POSEY,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

A defendant appeals the district court's denial of his motion to correct an illegal sentence, arguing his sentence constitutes cruel and unusual punishment. **AFFIRMED.**

Micki M. Mayes of Micki M. Mayes Law Firm, Davenport, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Jean C. Pettinger, Assistant Attorneys General, Michael J. Walton, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee.

Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Xzavier Posey appeals the district court's denial of his motion to correct an illegal sentence. Posey pleaded guilty to child endangerment resulting in the death of a child, a class "B" felony, pursuant to Iowa Code section 726.6(4) (2007). He was sentenced to a term of incarceration for no more than fifty years. On appeal he claims his sentence amounted to cruel and unusual punishment under both the Eighth Amendment of the U.S. Constitution and article 1, section 17 of the Iowa Constitution.

**I.    Background Facts and Proceedings**

On August 31, 2008, sixteen-year-old Xzavier Posey was alone and caring for his three-week-old son. Posey did not have any prior experience with newborn children and could not get the infant to eat or stop crying. No one was around to help him with the child, Posey's mother having just left the home for work and the child's mother asleep in another room. Posey became frustrated and shook his son. Posey and the child's mother took him to the hospital because he was not breathing. The child was air-lifted to another hospital where he stayed for several weeks until he was released home. On November 15, 2008, the child died as a result of the injuries he sustained on August 31, 2008.

On January 7, 2009, the State charged Posey by trial information with one count murder in the first degree and one count child abuse resulting in death. On December 7, 2009, Posey pleaded guilty to child endangerment resulting in the death of a child under Iowa Code section 726.6(4). On December 29, 2009, the district court sentenced Posey to an indeterminate term of incarceration for no

more than fifty years. On December 13, 2012, Posey petitioned for postconviction relief, which he later dismissed on January 2, 2015. On September 10, 2014, Posey filed a motion to correct an illegal sentence. The district court conducted an evidentiary hearing on January 9, 2015, and denied Posey's motion on January 13, 2015. This appeal followed.

## II. Standard of Review

A defendant may challenge the legality of a sentence at any time. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009); *see also* Iowa R. Crim. P. 2.24(5)(a). "Although challenges to illegal sentences are ordinarily reviewed for correction of legal errors, we review an allegedly unconstitutional sentence de novo." *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014).

## III. Analysis

Posey argues that his sentence was illegal and thus unconstitutional because it constituted cruel and unusual punishment under both the federal and state constitutions. He contends his sentence of an indeterminate term of incarceration for no more than fifty years is grossly disproportionate to the crime he committed, and thus his sentence, as applied to him, is unconstitutional. He further contends his sentence is a "lengthy term-of-years sentence" or a "de facto mandatory minimum sentence" that required the district court to consider individualized sentencing factors.[1] *See Lyle*, 854 N.W.2d at 404; *see State v.*

---

[1] At oral argument, Posey appeared to ask this court to make Iowa Code section 901.5(14) retroactive and resentence him accordingly. In his briefs, Posey acknowledged that the Iowa Legislature "recognize[d] th[e] need for individualized sentencing factors by enacting Iowa Code [s]ection 901.5(14)," but at no point in his briefs does he argue that section 901.5(14) should be made retroactive and applied to

*Null*, 836 N.W.2d 41, 72 (Iowa 2013), *see also State v. Pearson*, 836 N.W.2d 88, 96–97 (Iowa 2013).

Both the Eighth Amendment of the U.S. Constitution and article I, section 17 of the Iowa constitution prohibit the infliction of cruel and unusual punishment. U.S. Const. amend. VIII; Iowa Const. art. I, § 17 ("Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."). Posey argues his sentence is cruel and unusual punishment "because it is so excessively severe that it is disproportionate to the offense charged." *State v. Robbins*, 257 N.W.2d 63, 68 (Iowa 1977). When a defendant challenges his sentence under both article 1, section 17 of the Iowa constitution and the Eighth Amendment of the U.S. Constitution, we analyze the claim under the "more stringent gross-disproportionality review" available under the Iowa constitution. *State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012).

To determine whether Posey's sentence is grossly disproportionate to his crime, we turn to the three-step test developed in *Solem v. Helm*: (1) "the gravity of the offense and the harshness of the penalty"; (2) a comparison of "the sentences imposed on other criminals in the same jurisdiction"; and (3) a comparison of "the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. 277, 290–91 (1983). The first factor poses a high burden for Posey. *See Bruegger*, 773 N.W.2d at 873 ("[I]t is a rare case in which

---

him. Our case law is clear, "we do not consider issues raised for the first time in oral argument." *Dilley v. City of Des Moines*, 247 N.W.2d 187, 195 (Iowa 1976). Therefore, we decline to consider whether section 901.5(14) should be applied retroactively.

a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.") (internal quotation marks omitted). Only if a challenge survives this threshold test do we progress to the second and third *Solem* prongs. *Id.*

During our proportionality review, we are mindful of four principles. *Oliver*, 812 N.W.2d at 650. First, we defer to legislative determinations of punishment and realize a sentence need not adhere to strict proportionality to be constitutional. *See Bruegger*, 773 N.W.2d at 872 ("[A] reviewing court is not authorized to generally blue pencil criminal sentences to advance judicial perceptions of fairness."); *see also Ewing v. California*, 538 U.S. 11, 28 (2003) (emphasizing a reviewing court does not "sit as a 'superlegislature' to second-guess policy choices"). Second, although we impose a more rigorous review under our state constitution than under its federal counterpart, it remains rare that a sentence is so grossly disproportionate to the offense that it satisfies the threshold inquiry under *Solem*. *Oliver*, 812 N.W.2d at 650 (citing Iowa cases in which defendants failed to meet this preliminary standard). Third, we regard a recidivist offender as more culpable and, therefore, more deserving of a longer sentence than a first-time offender. *Id.* Fourth, the unique features of a case may "converge to generate a high risk of potential gross disproportionality." *Id.* at 651 (quoting *Bruegger*, 773 N.W.2d at 884).

Keeping these principles in mind, we turn to the instant facts and consider whether Posey's sentence was grossly disproportionate to his offense of child endangerment that resulted in the death of his child under article 1, section 17 of

the Iowa Constitution. In support of his gross-disproportionality claim, Posey asserts he was merely a child raising a child without any experience in taking care of a newborn. He had only been involved in two minor incidents with law enforcement before this incident occurred. Posey took his child to the hospital upon learning his child was injured as a result of his shaking the child and took full responsibility for his son's death.

We find Posey's circumstances are not so unique as to "converge to form a high risk of disproportionality." *See Bruegger*, 773 N.W.2d at 884. Unique features to be considered include "a broadly framed crime, the permissible use of preteen juvenile adjudications as prior convictions to enhance the crime, and a dramatic sentence enhancement for repeat offenders." *Id.* Here, Posey's actions were not "inadvertently caught by a broadly written statute." *See Oliver*, 812 N.W.2d at 651. Rather, his conduct falls squarely within the elements of child endangerment resulting in the death of a child. *See* Iowa Code §§ 726.6(1)(a), (b), 726.6(4). Further, Posey's sentence was not based upon any preteen juvenile adjudications or a sentencing enhancement for repeat offenders.

To fully address the proportionality question, we consider the totality of circumstances, including the mitigating factors identified by Posey, as well as other "potential factors that tend to aggravate the gravity of the offense and magnify the consequences on [the victim]." *Bruegger*, 773 N.W.2d at 886. Here, the district court captured the gravity of the offense when it noted Posey had shaken his three-week-old son "with such ferocity that it resulted in his eventual

death." Posey testified that following the incident his son "was fighting for his life," requiring the aid of a ventilator to breathe and a feeding tube to eat, was unable to see or hear, and had a swollen head.

After considering the features of Posey's case, we do not find his sentence to be grossly disproportionate. Because the punishment does not create an inference of gross disproportionality, we need not analyze the second and third factors of *Solem*. *Oliver*, 812 N.W.2d at 653.

Posey also argues that his fifty-year sentence is a "lengthy term-of-years" or a "de facto mandatory minimum sentence" that denied him a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," *Graham v. Florida*, 560 U.S. 48, 75 (2010), and required the district court to apply the mitigating sentencing factors set forth in *Miller v. Alabama*, 132 S. Ct. 2455, 2468–69 (2012). *See Lyle*, 854 N.W.2d at 404; *see Null*, 836 N.W.2d at 72; *see also Pearson*, 836 N.W.2d at 96–97; *see also State v. Ragland*, 836 N.W.2d 107, 117 (Iowa 2013) (holding that *Miller v. Alabama* would apply retroactively to cases on direct and collateral review).

In *Null* and *Pearson*, the Iowa Supreme Court held that the *Miller* sentencing factors should be considered when a defendant has been sentenced to a lengthy term of years without the possibility of parole. *Null*, 836 N.W.2d at 72, 75; *Pearson*, 836 N.W.2d at 96.[2] *Lyle* expanded these holdings and held that

---

[2] The juvenile defendant in *Null* was convicted of second-degree murder and first-degree robbery and sentenced to a seventy-five-year aggregate sentence with a mandatory minimum of fifty-two and a half years. *Null*, 836 N.W.2d at 45. The juvenile defendant in *Pearson* was convicted of two counts of first-degree robbery and two

"all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution," 854 N.W.2d at 400, "without a prior determination by the district court that the minimum period of incarceration without parole is warranted under the factors identified in *Miller*," *id.* at 404 n.10.

Here, Posey acknowledges that the district court did not impose a mandatory minimum sentence but argues he effectively received one because the Iowa Department of Corrections (DOC) and the Iowa Board of Parole (BOP) impose a mandatory minimum time he must serve before he can complete a treatment program required for him to become eligible for parole. Any parole eligibility requirements imposed by the DOC and BOP are administrative policies and are within their sole discretion. *See State v. Remmers*, 259 N.W.2d 779, 785 (noting that "the board of parole [has] sole authority to make parole decisions" and a court's "sentencing decision is not an appropriate means for attempting to circumvent this principle"). The district court here did not impose a mandatory minimum sentence in order for Posey to become eligible for parole. Therefore, the district court was not required to consider the mitigating sentencing factors set forth under *Miller*, *Null*, and *Lyle*.

Because we find that Posey's sentence was not grossly disproportionate to the crime he committed nor did the district court impose a mandatory minimum sentence without the possibility of parole so as to deny him a meaningful opportunity for release, Posey's sentence did not violate the cruel and unusual

---

counts of first-degree burglary and sentenced to a fifty-year aggregate sentence with a mandatory minimum of thirty-five years. *Pearson*, 836 N.W.2d at 89.

punishment clause of the Eighth Amendment of the U.S. Constitution or article 1, section 17 of the Iowa Constitution.  Therefore, we affirm.

**AFFIRMED.**

McDonald, J., concurs; Danilson, C.J., concurs specially.

**DANILSON, Chief Judge.** (concurring specially)

I specially concur. Some defendants committing similar crimes as Posey committed are convicted of the lesser offense of manslaughter. Although I agree with the result reached, Posey's criminal act was once typically charged as manslaughter—an offense carrying considerably lesser penalties. At the same time, other defendants who have committed child endangerment causing death have been convicted of murder in the first degree in violation of Iowa Code section 707.2(5).[3] An old judge from Iowa once stated, "the longer you are in this business, the more you realize our sentences are too long." Perhaps the legislature can review and reform our criminal justice system so the criminal act of causing the death of a child by child endangerment is uniformly applied with an appropriate sentence.

---

[3] Iowa Code section 707.2(5) provides:
> A person commits murder in the first degree when the person . . . kills a child while committing child endangerment under section 726.6, subsection 1, paragraph "*b*", or while committing assault under section 708.1 upon the child, and the death occurs under circumstances manifesting an extreme indifference to human life.